1  **BRYAN CAVE LLP**
Stuart W. Price, California Bar No. 125918
2  Sean D. Muntz, California Bar No. 223549
David J. Joerger, California Bar No. 280498
3  3161 Michelson Drive, Suite 1500
4  Irvine, California  92612-4414
Telephone:  (949) 223-7000
5  Facsimile:  (949) 223-7100
6  E-Mail:     swprice@bryancave.com
            sean.muntz@bryancave.com
7            david.joerger@bryancave.com

8
Attorneys for Defendant
9  BANK OF AMERICA, N.A., erroneously sued as "BANK OF AMERICA Home
Loans Servicing LP;" RECONTRUST COMPANY, N.A., erroneously sued as
10 "RECONTRUST COMPANY;" BANK OF NEW YORK MELLON, erroneously
sued as "Bank of New York;" ESTHER GRAY; and SHERYL DELA CRUZ
11

12            **UNITED STATES DISTRICT COURT**

13      **CENTRAL DISTRICT OF CALIFORNIA, RIVERSIDE DIVISION**

14

15 APRIL MOTTAHEDEH,                    | Case No. 5:12-cv-00165-VAP-OP

16                                       Hon. Virginia A. Phillips
                    Plaintiff,          Courtroom:  2
17
                                        **REQUEST FOR JUDICIAL NOTICE**
18 vs.                                  **IN SUPPORT OF MOTION TO**
                                        **DISMISS PLAINTIFF'S FIRST**
19 BANK OF AMERICA Home Loans           **AMENDED COMPLAINT**
Servicing LP, Bank of America , N.A.,
20 RECONTRUST COMPANY, Bank of          [Filed with Notice of Motion and Motion
New York, Esther Gray, Sheryl Dela     to Dismiss; Memorandum of Points and
21 Cruz, Equity Options Inc, Mortgage   Authorities; and [Proposed] Order]
Electronic Registration Systems. and
22 Does 1 through 20,                    Hon.  Virginia A. Phillips

23                  Defendants          Date:  August 13, 2012
                                        Time:  2:00 p.m.
24                                       Ctrm:  2

25

26

27

28

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA  92612-4414

IR01DOCS562187.1

1  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

2  **PLEASE TAKE NOTICE** that on **August 13, 2012 at 2:00 p.m.**, or as soon

3  thereafter as this matter may be heard, in Courtroom 2 of the above entitled Court,

4  located at 3470 Twelfth Street, Riverside, California 92501, defendants BANK OF

5  AMERICA, N.A., erroneously sued as "BANK OF AMERICA Home Loans

6  Servicing LP;" RECONTRUST COMPANY, N.A., erroneously sued as

7  "RECONTRUST COMPANY;" BANK OF NEW YORK MELLON, erroneously

8  sued as "Bank of New York;" ESTHER GRAY; and SHERYL DELA CRUZ

9  (collectively "Defendants") request that the Court take judicial notice, pursuant to

10  Federal Rule of Evidence 201 and *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.

11  1994), of the following documents attached hereto as Exhibits A through F.

12  **Exhibit A:**  Deed of Trust, signed by Plaintiff on April 28, 2006, recorded in

13  the official records of San Bernardino County, California on May 16, 2006, as

14  Document No. 2006-0332838.

15  **Exhibit B:**  Corporation Assignment of Deed of Trust, dated June 1, 2006,

16  recorded in the official records of San Bernardino County, California on June 8,

17  2006, as Document No. 2006-0391710.

18  **Exhibit C:**  Assignment of Deed of Trust, dated September 22, 2011,

19  recorded in the official records of San Bernardino County, California on October 3,

20  2011, as Document No. 2011-0414975.

21  **Exhibit D:**  Substitution of Trustee, dated October 7, 2011, recorded in the

22  official records of San Bernardino County, California on October 12, 2011, as

23  Document No. 2011-0424968.

24  **Exhibit E:**  Notice of Default and Election to Sell Under Deed of Trust, dated

25  October 7, 2011, recorded in the official records of San Bernardino County,

26  California on October 12, 2011, as Document No. 2011-0424970.

27  **Exhibit F:**  Notice of Trustee's Sale, dated January 12, 2012, recorded in the

28  official records of San Bernardino County, California on January 17, 2012, as

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

1

1  Document No. 2012-0016364.

2      Federal Rules of Evidence section 201(b) allows this Court to "judicially

3  notice a fact that is not subject to reasonable dispute because it: (2) can be

4  accurately and readily determined from sources whose accuracy cannot reasonably

5  be questioned."  The Court "must take judicial notice of a party requests it and the

6  court is supplied with the necessary information."  *Id*. at section (c).

7      The Court's consideration of such documents does not convert the Rule

8  12(b)(6) motion into a motion for summary judgment.  *Branch*, 14 F.3d at 454

9  ("[D]ocuments whose contents are alleged in a complaint and whose authenticity no

10  party questions, but which are not physically attached to the pleading, may be

11  considered in ruling on a Rule 12(b)(6) motion to dismiss. Such consideration does

12  'not convert the motion to dismiss into a motion for summary judgment.'").  The

13  issue for the Court to resolve remains the same, i.e. , whether Plaintiff has stated a

14  claim upon which relief can be granted.

15      The majority of Plaintiff's causes of action allege facts which depend on the

16  contents of the above documents, but Plaintiff does not physically attach them to the

17  First Amended Complaint.  The documents are recorded in the Official Records of

18  San Bernardino County, and as such, are sources whose accuracy cannot reasonably

19  be questioned.  Accordingly, the Court's consideration of the documents is

20  appropriate and necessary to rule on the motion.

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

2

1    Defendants make this request in support of its Motion to Dismiss the First

2    Amended Complaint of Plaintiff April Mottahedeh.  This request is based on the

3    concurrently filed Notice of Motion and Motion to Dismiss, Memorandum of Points

4    and Authorities in support of, and all pleadings and records on file in this action, and

5    such briefing, papers and argument as may be permitted in this matter.

Dated:  July 9, 2012             **BRYAN CAVE LLP**
                              Stuart W. Price
                              Sean D. Muntz
                              David J. Joerger

                          By:   */s/ David Joerger*
                              David J. Joerger
                        Attorneys for Defendants
                        BANK OF AMERICA, N.A., erroneously
                        sued as "BANK OF AMERICA Home
                        Loans Servicing LP;" RECONTRUST
                        COMPANY, N.A., erroneously sued as
                        "RECONTRUST COMPANY;" BANK OF
                        NEW YORK MELLON, erroneously sued
                        as "Bank of New York;" ESTHER GRAY;
                        and SHERYL DELA CRUZ

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

REQUEST FOR JUDICIAL NOTICE

# EXHIBIT A

Electronically Recorded in Official Records, County of San Bernardino   5/16/2006 08:00 AM SH

Recording Requested by:
Orange Coast Title



**LARRY WALKER**
Auditor/Controller - Recorder
797 Orange Coast Title Company

Recording Requested By:
EQUITY OPTIONS, INC.



Doc #: **2006-0332838**

| | Titles: | 1 | Pages: | 17 |
|---|---|---|---|---|
| Fees | | | | 56.00 |
| Taxes | | | | .00 |
| Other | | | | .00 |
| PAID | | | | 56.00 |

And After Recording Return To:
EQUITY·OPTIONS, INC.
2112 EAST FOURTH STREET, SUITE 225
SANTA ANA, CALIFORNIA 92705
Loan Number: 060426007

APN: 0477-233-21-0-000

[Space Above This Line For Recording Data]

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)  "Security Instrument" means this document, which is dated     APRIL 28, 2006          , together with all Riders to this document.
(B)  "Borrower" is  APRIL L MOTTAHEDEH, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY

Borrower is the trustor under this Security Instrument.
(C)  "Lender" is  EQUITY OPTIONS, INC.

Lender is a  CALIFORNIA CORPORATION                                    organized
and existing under the laws of  CALIFORNIA
Lender's address is  2112 EAST FOURTH STREET, SUITE 225, SANTA ANA, CALIFORNIA 92705
Lender is the beneficiary under this Security Instrument.
(D)  "Trustee" is  EQUITY OPTIONS, INC., A CALIFORNIA CORPORATION

(E)  "Note" means the promissory note signed by Borrower and dated     APRIL 28, 2006       .
The Note states that Borrower owes Lender   ONE HUNDRED SEVENTY-FIVE THOUSAND AND 00/100                                   Dollars (U.S. $ 175,000.00          )
plus interest.  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  JUNE 1, 2036      .
(F)  "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G)  "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005 1/01                                Page 1 of 14

DocMagic *eFerms* 800-649-1362
www.docmagic.com

Ca3005.dot

(H)  "Riders" means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider     ☐ Planned Unit Development Rider
☐ Balloon Rider     ☐ Biweekly Payment Rider
☐ 1-4 Family Rider     ☐ Second Home Rider
☐ Condominium Rider     ☒ Other(s) [specify]
         PREPAYMENT RIDER

(I)  "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J)  "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K)  "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L)  "Escrow Items" means those items that are described in Section 3.

(M)  "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for:  (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N)  "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O)  "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P)  "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q)  "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender:  (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

       COUNTY         of         SAN BERNARDINO       :
    [Type of Recording Jurisdiction]             [Name of Recording Jurisdiction]
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 0477-233-21-0-000

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT       DocMagic *eForms* 800-649-1362
Form 3005 1/01                Page 2 of 14                 www.docmagic.com

Ca3005.dot

Order No. 724358-44

# Exhibit "A"

The land referred to in this policy is situated in the County of San Bernardino, State of California, and is described as follows:

A portion of the south one-half of the northeast one-quarter of Section 21, Township 5 North, Range 4 West, San Bernardino Meridian, in the City of Victorville, County of San Bernardino, State of California, described as follows:

Commencing on the west line of said south one-half of the northeast one-quarter; thence south 0° 37' 210 Feet from the northwest corner thereof; thence north 89° 32' 30" east 1265.34 feet to the true point of beginning; thence continuing north 89° 32' 30" east 200 feet; thence south 0° 27' 30" east 60 feet; thence south 89° 32' 30" west 200 feet; thence north 0° 27' 30" west 60 feet to the true point of beginning.

which currently has the address of   14266 CITY VIEW COURT

[Street]

VICTORVILLE                    , California  92392/5   ("Property Address"):

[City]                                        [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:
1.   **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005 1/01                           Page 3 of 14                      *DocMagic eForms* 800-649-1362
                                                                          *www.docmagic.com*

Ca3005.dot

**2.   Application of Payments or Proceeds.**  Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:  (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3.  Such payments shall be applied to each Periodic Payment in the order in which it became due.  Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge.  If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full.  To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.  Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3.   Funds for Escrow Items.**  Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for:  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10.  These items are called "Escrow Items."  At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item.  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section.  Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items.  Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time.  Any such waiver may only be in writing.  In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require.  Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9.  If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount.  Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA.  Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank.  Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA.  Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds.  Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds.  Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA.  If there is a shortage of Funds held in escrow, as defined under RESPA,

DocMagic *EFerma* 800-649-1362
www.docmagic.com

Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

   4.   **Charges; Liens.**  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

   Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

   Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

   5.   **Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

   If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

   All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005 1/01                                    Page 5 of 14

DocMagic *EFPTS* 800-649-1362
www.docmagic.com

Ca3005.dot

SAN BERNARDINO,CA    DOCUMENT: TD 2006.332838                Page 6 of 17

Printed on 2/16/2012 1:39:02 PM       Provided by DataTrace System

and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal

---

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005 1/01                                    Page 6 of 14

DocMagic *℮Ϝɐℛᵯℨ* 800-649-1362
www.docmagic.com

Ca3005.dot

proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property.  Lender's actions can include, but are not limited to:  (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding.  Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off.  Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so.  It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.  If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease.  If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.**  If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect.  If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender.  If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect.  Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance.  Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve.  Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance.  If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law.  Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed.  Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses.  These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements.  These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses.  If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance."  Further:

---

DocMagic eⓇForms 800-649-1362
www.docmagic.com

Ca3005.dot

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan.  Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law.  These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11.  Assignment of Miscellaneous Proceeds; Forfeiture.  All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.  Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction:  (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value.  Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.  "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument.  Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument.  The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in

---

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005 1/01                                        Page 9 of 14

*DocMagic* ℰⒻⓞⓡⓜⓢ *800-649-1362*
*www.docmagic.com*

Ca3005.dot

this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005 1/01                                      Page 10 of 14

DocMagic *eFarms* 800-649-1362
www.docmagic.com

Ca3005.dot

SAN BERNARDINO,CA    DOCUMENT: TD 2006.332838                         Page 11 of 17

Printed on 2/16/2012 1:39:03 PM    Provided by DataTrace System

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

   **21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

   Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

   Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

   **NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:
   **22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

---

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005 1/01
Page 11 of 14

*DocMagic eForms* 800-649-1362
www.docmagic.com

Cx3005.dot

---

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security
Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)          _____ (Seal)
APRIL L MOTTAHEDEH              -Borrower                                          -Borrower


_____ (Seal)          _____ (Seal)
                               -Borrower                                          -Borrower


_____ (Seal)          _____ (Seal)
                               -Borrower                                          -Borrower


Witness:                                           Witness:


_____                 _____


CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005 1/01                        Page 13 of 14

DocMagic ℰℱℴℛℳℐ  800-649-1362
www.docmagic.com

Cs3005.doc

——————————————— [Space Below This Line For Acknowledgment] ———————————————

State of California )
 ) ss.
County of *Orange* )

On *April 28, 2006* before me, *Julia L. Ghavami, Notary Public*

personally appeared APRIL L MOTTAHEDEH

~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/~~are~~ subscribed to the within instrument and acknowledged to me that ~~he/she/they~~ executed the same in ~~his/her/their~~ authorized capacity(~~ies~~), and that by ~~his/her/their~~ signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.



JULIA L. GHAVAMI
Commission # 1437537
Notary Public - California
Orange County
My Comm. Expires Sep 2, 2007

 NOTARY SIGNATURE

 Julia L. Ghavami
 (Typed Name of Notary)

 NOTARY SEAL

---

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005 1/01
 Page 14 of 14

DocMagic *eForms* 800-649-1362
www.docmagic.com

Ca3005.doc

# PREPAYMENT RIDER

Loan Number: 060426007

Date: APRIL 28, 2006

Borrower(s): APRIL L MOTTAHEDEH

     THIS PREPAYMENT RIDER (the "Rider") is made this 28th day of APRIL ,
2006 , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure repayment of Borrower's promissory note (the "Note") in favor of
EQUITY OPTIONS, INC., A CALIFORNIA CORPORATION

("Lender"). The Security Instrument encumbers the Property more specifically described in the Security
Instrument and located at

     14266 CITY VIEW COURT, VICTORVILLE, CALIFORNIA 923975
                          [Property Address]

     ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A.    **PREPAYMENT CHARGE**
    The Note provides for the payment of a prepayment charge as follows:

     4 . **BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE**
        I have the right to make payments of Principal at any time before they are due.
A payment of Principal only is known as a "Prepayment." When I make a Prepayment,
I will tell the Note Holder in writing that I am doing so. I may not designate a payment
as a Prepayment if I have not made all the monthly payments due under the Note.
        The Note Holder will use my Prepayments to reduce the amount of Principal that
I owe under the Note. However, the Note Holder may apply my Prepayment to the
accrued and unpaid interest on the Prepayment amount, before applying my Prepayment
to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be
no changes in the due dates of my monthly payment unless the Note Holder agrees in
writing to those changes.
        If the Note contains provisions for a variable interest rate, my partial Prepayment
may reduce the amount of my monthly payments after the first Change Date following my
partial Prepayment. However, any reduction due to my partial Prepayment may be offset
by an interest rate increase.

---

CALIFORNIA PREPAYMENT RIDER
(CIVIL CODE PROVISION)
12/13/05                    Page 1 of 2

*DocMagic* €*Farms* 800-649-1362
www.docmagic.com

Capr.ppf

If within THIRTY-SIX ( 36 ) months from the date the Security Instrument is executed I make a full Prepayment or one or more partial Prepayments, and the total of all such Prepayments in any 12-month period exceeds TWENTY percent ( 20.000 %) of the original principal amount of the loan, I will pay a Prepayment charge in an amount equal to SIX ( 6 ) months' advance interest on the amount by which the total of my Prepayments within any 12-month period exceeds TWENTY percent ( 20.000 %) of the original principal amount of the loan.

If the Note contains provisions for a variable interest rate, the purpose of the loan is to finance the purchase or construction of real property containing four or fewer residential units or on which four or fewer residential units are to be constructed, and the Note Holder is not a "supervised financial organization," as defined in California Civil Code Section 1916.5, then I may prepay the loan in whole or in part without a Prepayment charge within 90 days of notification of any increase in the rate of interest.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Rider.

_____ (Seal)          _____ (Seal)
APRIL L MOTTAHEDEH          -Borrower                                                          -Borrower

_____ (Seal)          _____ (Seal)
                                          -Borrower                                                          -Borrower

_____ (Seal)          _____ (Seal)
                                          -Borrower                                                          -Borrower

CALIFORNIA PREPAYMENT RIDER
(CIVIL CODE PROVISION)
12/13/05                                        Page 2 of 2

DocMagic *eForms* 800-649-1362
www.docmagic.com

Capr.ppf

# EXHIBIT B

Electronically Recorded in Official Records, County of San Bernardino    6/08/2006
                                                                          09:36 AM
                                                                          FV

**LARRY WALKER**
Auditor/Controller - Recorder

**797  Orange Coast Title Company**

| Doc #: | **2006-0391710** | | Titles:  1 | Pages:  3 |
|---|---|---|---|---|
| | | | Fees | 14.00 |
| | | | Taxes | .00 |
| | | | Other | .00 |
| | | | PAID | 14.00 |

RECORDING REQUESTED BY:
EQUITY OPTIONS, INC.

AND AFTER RECORDING RETURN TO:
EQUITY OPTIONS, INC.
2112 EAST FOURTH STREET, SUITE 225
SANTA ANA, CALIFORNIA 92705

Order No. 724358-44
Escrow No. 05204825-502 SC2
Loan No. 060426007

——— SPACE ABOVE THIS LINE FOR RECORDER'S USE ———

# Corporation Assignment of Deed of Trust

MIN: 1000157-0006815895-1    MERS Phone: 1-888-679-6377

FOR VALUE RECEIVED, EQUITY OPTIONS, INC. ITS SUCCESSORS AND
ASSIGNS, HEREBY ASSIGNS AND TRANSFERS TO MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., ITS SUCCESSORS AND ASSIGNS, P.O.
BOX 2026 FLINT, MICHIGAN 48501-2026, ALL ITS RIGHT, TITLE AND
INTEREST IN AND TO A CERTAIN DEED OF TRUST EXECUTED BY APRIL L
MOTTADEHEH, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY
TO EQUITY OPTIONS, INC.

and bearing the date of APRIL 28, 2006
and recorded as Instrument No. 06-332838 on May 16, 2006    in book
page                   , of Official Records in the County Recorder's office of SAN BERNARDINO
County, CALIFORNIA                    , describing land therein as:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 0477-233-21-0-000

This document filed for recording by Orange
Coast Title Company is an
Accommodation Only.
It has not been examined as to its execution
or as to its effect upon the title.

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon
with interest, and all rights accrued or to accrue under said Deed of Trust.

CALIFORNIA CORPORATION ASSIGNMENT OF DEED OF TRUST
07/25/05                                                     Page 1 of 2

DocMagic eForms  800-649-1362
www.docmagic.com

Ca.mza

STATE OF CALIFORNIA         SS.
COUNTY OF SAN BERNARDINO

On _June 1, 2006_ before me,
_Jon M Teunissen, Notary Public_
personally appeared
_L. Justine Gibbs_

personally known to me (~~or proved to me on the basis~~
~~of satisfactory evidence~~) to be the person(~~s~~) whose
name(~~s~~) is/~~are~~ subscribed to the within instrument and
acknowledged to me that ~~he/she/~~they executed the same
in ~~his/her/their~~ authorized capacity(~~ies~~), and that by
~~his/her/their~~ signature(~~s~~) on the instrument the
person(~~s~~), or the entity upon behalf of which the
person(~~s~~), acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

JON M. TEUNISSEN
Commission # 1632512
Notary Public - California
Orange County
My Comm. Expires Dec 22, 2009

(This area for official notarial seal)

EQUITY OPTIONS, INC., A
CALIFORNIA CORPORATION

_L. Justine Gibbs_
L. Justine Gibbs
Administrator

DocMagic eForms 800-649-1362
www.docmagic.com

Ca.mza

Loan Number:   060426007

Date:   APRIL 28, 2006

Property Address:   14266 CITY VIEW COURT, VICTORVILLE, CALIFORNIA 92392

## EXHIBIT "A"

## LEGAL DESCRIPTION

The land referred to in this report is situated in the County of San Bernardino, State of California, and is described as follows:

The land referred to in this policy is situated in the County of San Bernardino, State of California, and is described as follows:

A portion of the south one-half of the northeast one-quarter of Section 21, Township 5 North, Range 4 West, San Bernardino Meridian, in the City of Victorville, County of San Bernardino, State of California, described as follows:

Commencing on the west line of said south one-half of the northeast one-quarter; thence south 0° 37' 210" from the northwest corner thereof; thence north 89° 32' 30" east 1265.34 feet to the true point of beginning; thence continuing north 89° 32' 30" east 200 feet; thence south 0° 27' 30" east 60 feet; thence south 89° 32' 30" west 200 feet; thence north 0° 27' 30" west 60 feet to the true point of beginning.

A.P.N. # : 0477-233-21-0-000

DocMagic *eForms* 800-649-1362
www.docmagic.com

Ca.mza

# EXHIBIT C

Recorded in Official Records, County of San Bernardino



**DENNIS DRAEGER**
ASSESSOR – RECORDER – CLERK

10/03/2011
1:55 PM
FV

C Priority Mail

Doc#: **2011–0414975**

| Titles: | 1 | Pages: | 1 |
|---|---|---|---|

| Fees | 18.00 |
|---|---|
| Taxes | 0.00 |
| Other | 0.00 |
| **PAID** | **$18.00** |

Recording Requested By:
**Bank of America**
Prepared By: Rozan Conteras
450 E. Boundary St.
Chapin, SC 29036
888-603-9011
When recorded mail to:
CoreLogic
450 E. Boundary St.
Attn: Release Dept.
Chapin, SC 29036
CA0-ADT 15708039          9/21/2011

DocID#      63812807355919284

Property Address:
**14266 City View Ct**
**Victorville, CA 92395-4582**

This space for Recorder's use

MIN #: 1000157-0006815895-1      MERS Phone #: 888-679-6377

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **3300 S.W. 34th Avenue, Suite 101 Ocala, FL 34474** does hereby grant, sell, assign, transfer and convey unto **THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-10** whose address is **101 BARCLAY ST - 4W, NEW YORK ,NY 10286** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender:           **EQUITY OPTIONS, INC.**
Original Borrower(s):     **APRIL L MOTTAHEDEH, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY**
Original Trustee:         **EQUITY OPTIONS, INC., A CALIFORNIA CORPORATION**
Date of Deed of Trust:   4/28/2006
Original Loan Amount:    $175,000.00

Recorded in San Bernardino County, CA on: 5/16/2006, book N/A, page N/A and instrument number **2006-0332838**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on

9-22-11

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By: *Marie Barclay*

**Marie Barclay, Assistant Secretary**

State of **Arizona**
County of **Maricopa**

On 9-22-11 , before me, *Richard Amelung* , Notary Public, personally appeared **Marie Barclay** of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**, whose identity was proven to me on the basis of satisfactory evidence to be the person who he or she claims to be and whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my notorial seal the day and year last written.

*Richard Amelung*

Notary Public: Richard Amelung
My Commission Expires: 8-15-15

RICHARD AMELUNG
Notary Public
Maricopa County, Arizona
My Comm. Expires 8-15-15

# EXHIBIT D

**LANDSAFE TITLE**

RECORDING REQUESTED BY:
RECONTRUST COMPANY

**AND WHEN RECORDED MAIL DOCUMENT
AND TAX STATEMENTS TO:**
RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063

ATTN: Sheryl Dela Cruz
TS No. 11-0117001

11-0098380




Recorded in Official Records, County of San Bernardino

**DENNIS DRAEGER**
ASSESSOR - RECORDER - CLERK

10/12/2011
8:00 AM
BGJ

**771 Document Processing Solutions**

Doc#: **2011-0424968**

| Titles: 1 | Pages: 1 |
|---|---|

| Fees | 18.00 |
| Taxes | 0.00 |
| Other | 0.00 |
| PAID | $18.00 |

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## SUBSTITUTION OF TRUSTEE

WHEREAS, APRIL L MOTTAHEDEH, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY was the original Trustor, EQUITY OPTIONS, INC., A CALIFORNIA CORPORATION was the original Trustee, and EQUITY OPTIONS, INC. was the original Beneficiary under that certain Deed of Trust dated 04/28/2006 recorded on 05/16/2006 as Instrument No. 2006-0332838 in Book Page of Official Records of San Bernardino County, California;

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

NOW THEREFORE, the undersigned hereby substitutes RECONTRUST COMPANY, N.A., WHOSE ADDRESS IS: 1800 Tapo Canyon Rd., CA6-914-01-94 SIMI VALLEY, CA 93063, as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

DATED: October 07, 2011

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

)

State of: **CALIFORNIA**
County of: **VENTURA**

BY: _____  OCT 0 7 2011
**Loryn Stone**, Assistant Secretary
**JEANINE HOFFMAN**

On OCT 0 7 2011 before me, _____, notary public, personally appeared **Loryn Stone**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
**JEANINE HOFFMAN**

JEANINE HOFFMAN
Commission # 1840486
Notary Public - California
Los Angeles County
My Comm. Expires Apr 11, 2013

*Form sub (01/09)*

# EXHIBIT E

LANDSAFE TITLE

RECORDING REQUESTED BY:
WHEN RECORDED MAIL TO:
RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063

Attn: Sheryl Dela Cruz
TS No. 11-0117001
Title Order No. 11-0098380

Recorded in Official Records, County of San Bernardino   10/12/2011
                                                         8:00 AM
**DENNIS DRAEGER**                                        BGJ
ASSESSOR – RECORDER – CLERK

771 Document Processing Solutions

Doc#:  **2011−0424970**

| | | |
|---|---|---|
| Titles: | 1 | Pages:  4 |

| | |
|---|---|
| Fees | 27.00 |
| Taxes | 0.00 |
| Other | 0.00 |
| PAID | $27.00 |

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### IMPORTANT NOTICE

## IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,

and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property.  No sale date may be set until approximately 90 days from the date this notice of default may be recorded ( which date of recordation appears on this notice).

This amount is  $33,532.24, as of 10/07/2011 and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations ( such as insurance and taxes) required by your note and deed of trust or mortgage.  If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing.  In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay.  You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made.   However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this Notice of Default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

SEE ATTACHED DECLARATION

TS No.  11-0117001

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

   To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK,AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWABS INC., ASSET-BACKED CERTIFICATES, SERIES 2006-10
C/O Bank of America, N.A.
400 National way
SIMI VALLEY,  CA   93065
FORECLOSURE DEPARTMENT (800) 669-6650

   If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.

   Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure. Remember,

## YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN THAT: RECONTRUST COMPANY, N.A., is acting as an agent for the Beneficiary under a Deed of Trust dated 04/28/2006, executed by APRIL L MOTTAHEDEH, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY as Trustor, to secure certain obligations in favor of EQUITY OPTIONS, INC. as beneficiary recorded 05/16/2006, as Instrument No. 2006-0332838 (or Book , Page ) of Official Records in the Office of the County Recorder of San Bernardino County, California.
Said obligation including ONE NOTE FOR THE ORIGINAL sum of $ 175,000.00.
That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of :  FAILURE TO PAY THE INSTALLMENT OF PRINCIPAL, INTEREST AND IMPOUNDS WHICH BECAME DUE ON  12/01/2009  AND ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL, INTEREST AND IMPOUNDS, TOGETHER WITH ALL LATE CHARGES, PLUS ADVANCES MADE AND COSTS INCURRED BY THE BENEFICIARY, INCLUDING FORECLOSURE FEES AND COSTS AND/OR ATTORNEYS FEES.  IN ADDITION, THE ENTIRE PRINCIPAL AMOUNT WILL BECOME DUE ON  06/01/2036  AS A RESULT OF THE MATURITY OF THE OBLIGATION ON THAT DATE.

TS No. 11-0117001

That by reason thereof, the present beneficiary under such deed of trust has executed and delivered to RECONTRUST COMPANY, N.A. such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

If required by the provisions of Section 2923.5 of the California Civil Code, the declaration from the mortgagee, beneficiary or authorized agent is attached to the Notice of Default duly recorded with the appropriate County Recorder's office.

Dated: October 07, 2011

RECONTRUST COMPANY, N.A., as agent for the Beneficiary

OCT 0 7 2011

Authorized Signer

IRMA GARAY
Assistant Vice President

*Form nodorig_2011.3.0_03/2011*


**Bank of America**
**Home Loans**

**Notice Date:** September 30, 2011

| 11-0117001 |
| --- |

April L Mottahedeh
Po Box 290311
Phelan, CA  92329

**Property Address:**
14266 City View Court
Victorville, CA  92395

## CALIFORNIA DECLARATION

I, *Leonard A Abraham*, Mortgage Servicing Specialist II of Bank of America, N.A., declare under penalty of perjury, under the laws of the State of California, that the following is true and correct:

Bank of America N.A.

☐ has contacted the borrower to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure,

☒ tried with due diligence to contact the borrower in accordance with California Civil Code Section 2923.5, or

☐ verified that the borrower has surrendered the property.

☐ has evidence and reasonably believes that the borrower has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and to avoid their contractual obligations to beneficiaries.

☐ has confirmed that the borrower(s) filed for bankruptcy and the proceedings have not been finalized to wit, there is no order on the court's docket closing or dismissing the bankruptcy case.

☐ The provisions of California Civil Code §2923.5 do not apply because State Reason.

*9/30/2011 Richardson, TX*
Date and Place

*Leonard A. Abraham*
Name of Signor

CA-DECLARATIONS  8838/9508  8/27/2008

# EXHIBIT F

LANDSAFE TITLE

RECORDING REQUESTED BY:
RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063

WHEN RECORDED MAIL TO:
RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063
TS No. 11-0117001
Title Order No. 11-0098380

Recorded in Official Records, County of San Bernardino    1/17/2012
8:00 AM
 **DENNIS DRAEGER**    SG
ASSESSOR – RECORDER – CLERK

771 Document Processing Solutions

Doc#: **2012 – 0016364**



| | Titles: | 1 | Pages: | 1 |
|---|---|---|---|---|
| Fees | | | | 18.00 |
| Taxes | | | | 0.00 |
| Other | | | | 0.00 |
| PAID | | | | $18.00 |

---

APN No. 0477-233-21-0-000

## NOTICE OF TRUSTEE'S SALE

## YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 04/28/2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

Notice is hereby given that RECONTRUST COMPANY, N.A., as duly appointed trustee pursuant to the Deed of Trust executed by APRIL L MOTTAHEDEH, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY, dated 04/28/2006 and recorded 05/16/2006, as Instrument No. 2006-0332838, in Book , Page of Official Records in the office of the County Recorder of SAN BERNARDINO County, State of California, will sell on 02/06/2012 at 12:00 PM, At the North Arrowhead Avenue entrance to the County Courthouse, 351 North Arrowhead Avenue, San Bernardino, CA 92401 at public auction, to the highest bidder for cash or check as described below, payable in full at time of sale, all right, title, and interest conveyed to and now held by it under said Deed of Trust, in the property situated in said County and State and as more fully described in the above referenced Deed of Trust.  The street address and other common designation, if any, of the real property described above is purported to be:  14266 CITY VIEW COURT, VICTORVILLE, CA  92395.  The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

The total amount of the unpaid balance with interest thereon of the obligation secured by the property to be sold plus reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is $203,309.10. It is possible that at the time of sale the opening bid may be less than the total indebtedness due.

In addition to cash, the Trustee will accept cashier's checks drawn on a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state.

Said sale will be made, in an "AS IS" condition, but without covenant or warranty, express or implied, regarding title, possession or encumbrances, to satisfy the indebtedness secured by said Deed of Trust, advances thereunder, with interest as provided, and the unpaid principal of the Note secured by said Deed of Trust with interest thereon as provided in said Note, plus fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust.

If required by the provisions of Section 2923.5 of the California Civil Code, the declaration from the mortgagee, beneficiary or authorized agent is attached to the Notice of Trustee's Sale duly recorded with the appropriate County Recorder's office.

RECONTRUST COMPANY, N.A.
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA  93063
Phone/Sale Information: (800) 281-8219

JAN 1 2 2012

By:

Joselyn Casillas, Asst Vice President

RECONTRUST COMPANY, N.A. is a debt collector attempting to collect a debt.  Any information obtained will be used for that purpose.

*Form nos_2011.11.0_11/2011*

**PROOF OF SERVICE**
CCP 1013a(3) Revised 5/1/88
MOTTAHEDEH V. BANK OF AMERICA (CASE NO. 5:12-CV-00165-VAP-OP)

STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action.  My business address is:  3161 Michelson Drive, Suite 1500, Irvine, CA  92612-4414.  My email address is: angelina.andrade@bryancave.com.

On July 9, 2012, I served the following document(s) described as:

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

on all interested parties in this action by placing [X] a true copy [  ] the original thereof enclosed in sealed envelopes addressed as follows:

April Mottahedeh                    ***Pro Per Plaintiff***
9582 Buttemere Road
Phelan, CA 92371

[☐] BY MAIL - As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepaid at Irvine, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[☒] BY OVERNIGHT DELIVERY - Depositing the above document(s) in a box or other facility regularly maintained by FedEx in an envelope or package designated by FedEx with delivery fees paid or provided for.

[☒] BY CM/ECF NOTICE OF ELECTRONIC FILING:  I caused said document(s) to be served by means of this Court's electronic transmission of the Notice of Electronic filing through the Court's transmission facilities, to the parties and/or counsel who are registered CM/ECF Users set forth in the service list obtained from this Court.

[☒] FEDERAL - I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on July 9, 2012, at Irvine, California.

*Angelina Andrade*
Angelina Andrade

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

543553.1